# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| LADERIUS STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 18-1122-JDT-cgc |
| | ) | |
| LIEUTENANT CHUMLEY, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER PARTIALLY DISMISSING COMPLAINT AND DIRECTING THAT PROCESS BE ISSUED AND SERVED ON DEFENDANT LEBO

On July 11, 2018, Plaintiff Laderius Stevens, who at the time was incarcerated at the Riverbend Maximum Security Institution (RMSI) in Nashville, Tennessee,[1] filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, a motion to proceed *in forma pauperis*, and a motion to appoint counsel.  (ECF Nos. 1, 2 & 3.)  The complaint concerns events that allegedly occurred while Stevens was in custody at the West Tennessee State Penitentiary (WTSP) in Henning, Tennessee.  (ECF No. 1 at PageID 4.)  The Court issued an order granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b).  (ECF No. 7.)  On March 25, 2019, the Court denied Stevens's motion for appointment of counsel.  (ECF No. 10.)  The Clerk shall record the Defendants as Lieutenant First Name Unknown (FNU) Chumley; WTSP Warden Jonathan Lebo; Sergeant Robert Fine; and Cert Team Officer FNU Dorsey.

---

[1] Plaintiff has since been transferred to the Northeast Correctional Complex (NECX) in Mountain City, Tennessee.  (ECF No. 11.)

Stevens alleges that in May 2017, he was called to the property room to retrieve shoes he had specially ordered. (ECF No. 1 at PageID 6.) The property room officer would not allow Stevens to have the shoes because they were not from the approved vendor, but Stevens countered that he had Warden Lebo's permission to order the shoes. (*Id.*) The officer did not believe Stevens, so Stevens proposed they ask Warden Lebo, who was walking nearby. (*Id.* at 6-7.) Stevens and the officer found Warden Lebo, who confirmed he had given Stevens permission to order the shoes. (*Id.* at 7.) The officer refused to give Stevens the shoes, allegedly telling Warden Lebo that he could not permit only Stevens to order shoes from other vendors. (*Id.*) Warden Lebo did not reprimand the officer and allegedly walked away. (*Id.*) The next day, Stevens called Debra Johnson,[2] Supervisor of Wardens for the Western District of Tennessee, about the incident. (*Id.*) Johnson told Stevens "she would investigate the matter." (*Id.*)

A few days later, on May 11, 2017, Cert Team Officers Dorsey and Eastep, along with STG Coordinator Boucom,[3] approached Stevens and his cellmate for an impromptu cell search. (*Id.* at PageID 7-8.) The officers allegedly found nothing and left. (*Id.* at PageID 8.) That evening, however, Stevens alleges that he and his cellmate received disciplinary writeups for possessing two cell phones and two knives. (*Id.*) Sergeant Fine wrote that he found the items in an air duct during the search, even though Stevens contends Fine was not one of the officers who conducted the search that day. (*Id.*)

A hearing on the disciplinary report for possession of the knives, but not the cell phones, allegedly took place four days later. (*Id.*) Sergeant Fine allegedly testified that, contrary to the report, he was on the roof of the prison above Stevens's cell when he found the knives, which he

---

[2] Stevens does not name Johnson as a defendant.

[3] Officers Eastep and Boucom are not named as defendants.

passed to Officer Dorsey from the roof through a hole in the vent.  (*Id.* at PageID 8-9.)  Stevens

insists Officer Dorsey did not tell Stevens he found contraband during the cell search, but Dorsey

testified and corroborated Sergeant Fine's testimony that he had handed the knives to Dorsey

through a hole in the roof.  (*Id.* at PageID 9.)  The other officers present at the search did not testify,

nor did the officers enter into evidence photographs of the hole.  (*Id.*)  Lieutenant Chumley found

Stevens and his cellmate guilty based on Fine and Dorsey's testimony.  (*Id.*)  They were stripped

of 12 months of good time credits and received 30 days of "punitive time" plus a $5 fine.  (*Id.* at

PageID 9-10.)  Stevens never faced a hearing for possession of the cellphones.  (*Id.* at PageID 10.)

On May 19, 2017, four days after the hearing, two Cert Team Officers woke Stevens and

told him they were transferring him to the prison's segregation unit for suspected gang activity.

(*Id.*)  The officers would not provide Stevens with details, and a sergeant told him only that Warden

Lebo had told the sergeant "to lock [Stevens] up for gang activity."  (*Id.*)  Stevens remained in

segregation for 17 days but was never given more information or charged with any discipline.  (*Id.*

at PageID 10-11.)  On June 5, 2017, the day after he was released, the unit sergeant informed

Stevens he was being returned to segregation to serve the remainder of the 30-day penalty for

possession of the knives.  (*Id.* at PageID 11.)  Stevens, however, allegedly remained in segregation

for 67 additional days.  (*Id.*)

In the meantime, Stevens alleges he received an "administration segregation placement"

from Lieutenant Chumley informing him that he was designated to "supermax" placement as of

June 5, 2017, based on "old charges" for which he had already served his punishment and "a vague

statement about me being a security threat."  (*Id.*)  Stevens alleges he did not receive a timely

notice, hearing, or opportunity to address his supermax placement.  (*Id.* at PageID 12.)  He asserts

the supermax placement exceeded his sentence for possession of the knives and that this "major

change in my conditions of living" imposed an "atypical and significant hardship on me in relation

to the ordinary incidents of prison life." (*Id.*)  He alleges he is confined to his cell 23 hours a day

during weekdays and 24 hours on weekends, subjected to constant light, disciplined for shielding

the light from his eyes, and denied nearly any environmental or sensory stimuli. (*Id.*)  He alleges

that when he is allowed out of his cell, he is escorted by officers while wearing shackles and

handcuffs. (*Id.* at PageID 13.)  Stevens states he receives only three showers per week, has limited

access to cleaning utensils, and is denied other privileges like visitation and phone calls. (*Id.*)[4]

Stevens asserts that Warden Lebo retaliated against him, Sergeant Fine and Officer Dorsey

falsified their testimony that resulted in the initial segregation to Stevens, and Lieutenant Chumley

wrongfully ordered his supermax confinement.   (*Id.* at PageID 14-15.)   Stevens sues the

Defendants in their individual and official capacities. (*Id.* at PageID 1.)  He seeks an injunction

ordering the Tennessee Department of Correction (TDOC) to return him to the general prison

population, $850,000 in compensatory damages, and $175,000 in punitive damages.  (*Id.* at

PageID 15-16.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any

portion thereof, if the complaint—

(1)    is frivolous, malicious, or fails to state a claim upon which relief may be
granted; or

(2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

---

[4] These present-tense allegations, as well as Stevens's request for injunctive relief, appear
to indicate the restrictions of the "supermax" placement were ongoing even after Stevens's
transfer to the RMSI.

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Stevens filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

5

secured by the Constitution and laws, shall be liable to the party injured in an action
at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements:  (1) a deprivation of rights

secured by the "Constitution and laws" of the United States (2) committed by a defendant acting

under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Stevens's official-capacity claims against the Defendants are treated as claims against the

TDOC, the entity for which the Defendants are agents.  Claims against the TDOC are, in turn,

treated as claims against the State of Tennessee.  *See Will v. Mich. Dep't of State Police*, 491 U.S.

58, 71 (1989).  The Eleventh Amendment to the United States Constitution provides that "[t]he

Judicial power of the United States shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against one of the United States by Citizens of another State, or by

Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Eleventh Amendment has

been construed to prohibit citizens from suing their own states in federal court.  *Welch v. Tex.*

*Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v.*

*Halderman*, 465 U.S. 89, 100 (1984); *see also Va. Office for Protection & Advocacy v. Stewart*,

131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in

some circumstances Congress may abrogate it by appropriate legislation.  But absent waiver or

valid abrogation, federal courts may not entertain a private person's suit against a State." (citations

omitted)).    Tennessee  has  not  waived  its  sovereign  immunity.    *See*  Tenn.  Code  Ann.

§ 20-13-102(a).  Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983.  *Lapides*

*v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71.  Stevens,

therefore, has no valid claim against the State of Tennessee.

The Supreme Court has clarified, however, that "a state official in his or her official

capacity,  when  sued  for  injunctive  relief,  would  be  a  person  under  §  1983  because

'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985); *Ex Parte Young*, 209 U.S. 123, 159-160 (1908)); *see also Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993) ("[T]he [eleventh] amendment does not preclude actions against state officials sued in their official capacity for prospective injunctive or declaratory relief." (citing *Ex Parte Young*, 209 U.S. 123)).

To proceed with his official-capacity claims for prospective injunctive relief, Stevens must allege that the State of Tennessee was responsible for the violation of his constitutional rights because of a practiced custom or policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). The Sixth Circuit has held that to establish the requisite causal link between constitutional violation and policy, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citing *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)). The custom or policy must be "the moving force" behind the deprivation of the plaintiff's rights. *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 606-07 (6th Cir. 2007) (citing *Monell*, 436 U.S. at 694).

Stevens does not allege that a custom or policy of the State of Tennessee was the "moving force" behind the violations of his constitutional rights. He instead asserts that the individual Defendants violated his rights through their own actions. He therefore fails to state an official-capacity claim against any Defendant.

Stevens alleges that Warden Lebo retaliated against him for his call to Supervisor Johnson by initiating the cell search that eventually resulted in segregation and the loss of good time credits. The Court reviews Plaintiff's retaliation claim under the First Amendment. *See Harbin-Bey v.*

*Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation on the basis of a prisoner's exercise of his

First Amendment rights violates the Constitution.").  A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken
> against the plaintiff that would deter a person of ordinary firmness from continuing
> to engage in that conduct; and (3) there is a causal connection between elements
> one and two—that is, the adverse action was motivated at least in part by the
> plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  "Protected conduct, for the

purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the

courts in . . . civil rights claims."  *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-

X*, 175 F.3d at 391.  "[T]he plaintiff must be able to prove that the exercise of the protected right

was a substantial or motivating factor in the defendant's alleged retaliatory conduct."  *Smith v.

Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ.

v. Doyle*, 429 U.S. 274, 287 (1977)).

Stevens's alleged protected conduct is his call to Supervisor Johnson, who told Stevens she

would "investigate" Warden Lebo's refusal to discipline the property room officer who refused to

give Stevens his shoes.  Stevens suggests the call to Johnson precipitated the cell search,

disciplinary charges and hearing, and all that came after.

The law is unclear whether an informal complaint like Stevens's is entitled to protection

under the First Amendment.  The Sixth Circuit has noted that a prisoner's complaint need not

"take[] a specific form" to receive protected status.  *Holzemer v. City of Memphis*, 621 F.3d 512,

521 (6th Cir. 2010) (quoting *Pearson v. Welborn*, 471 F.3d 732 (7th Cir. 2006)).  Yet the Sixth

Circuit also has held that an inmate's letter to a warden's regional supervisor "asking that the

warden's behavior be 'monitored'" was not protected conduct under the First Amendment.  *Griffin

v. Berghuis*, 563 F. App'x 411, 415 (6th Cir. 2014).  The Court in *Griffin* relied on the principle

"that a prison inmate's speech is not protected by the First Amendment if it is 'inconsistent with

his status as a prisoner or with the legitimate penological objectives of the corrections system.'"

*Id.* (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

Stevens's call to Supervisor Johnson about his shoes and Warden Lebo's lack of response

to the insolent property room officer is arguably innocuous compared to the conduct in *Griffin*, in

which the inmate disseminated the letter to other inmates and suggested an imminent coup against

prison administrators.  *Id.* at 418.  Moreover, Stevens did not make the call as a member of a

warden's forum or other internal group, as did Griffin.  *Id.* at 415.  Stevens called Supervisor

Johnson on his own because he was concerned about Warden Lebo's behavior towards Stevens

and the property room officer.  Nothing in the complaint suggests that Stevens's call interfered

with prison objectives or posed a threat to security, like the letter in *Griffin*.  Construing the

complaint liberally, the Court concludes that Stevens's call is protected conduct under the First

Amendment.

Stevens also sufficiently alleges the second element of a retaliation claim.  He alleges that,

because of his call to Supervisor Johnson, officers searched his cell, concocted false disciplinary

charges, and ultimately were successful in convicting him of those charges.  Facing the risk of

punishment for contacting the Warden's supervisor likely would "deter a person of ordinary

firmness from continuing to engage in that conduct."  *See Scott v. Churchill*, 377 F.3d 565, 572

(6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action

to support a claim of retaliation.")

Last, Stevens sufficiently shows a causal connection between the call and the search.

Stevens alleges the cell search took place only "[a] few days" after he called Johnson and "as a

result of making a complaint."  (ECF No. 1 at PageID 7.)  "Temporal proximity can provide

circumstantial evidence of retaliatory motive." *Walton v. Gray*, 695 F. App'x 144, 146 (6th Cir. 2017) (citing *Hill*, 630 F.3d at 475-76); *see King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (noting that "temporal proximity between protected conduct and retaliatory acts" when close enough may "creat[e] an inference of retaliatory motive"); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (same). Stevens, therefore, has stated a claim of retaliation against Warden Lebo.

Stevens asserts that Lieutenant Chumley deprived him of due process at the disciplinary hearing, which resulted in the loss of good time credits. The loss of good time sentence credits imposed as punishment for a disciplinary infraction generally will implicate a liberty interest. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *see also Guile v. Ball*, 521 F. App'x 542, 544 (6th Cir. 2013). In *Wolff*, the Supreme Court set out the minimum due process that must be afforded a prisoner who is charged with a disciplinary offense that may result in the loss of good time or sentence credits. In those instances, due process requires the prisoner be provided: (i) at least twenty-four hours' written notice of the charges, 418 U.S. at 563-64; (ii) the opportunity to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals," *id.* at 566; and (iii) a written statement by the factfinders of the evidence relied on and reasons for the disciplinary action, *id.* at 564. Stevens states he did receive several days' written notice before the hearing and a written statement about the evidence on which Lieutenant Chumley relied. (ECF No. 1 at PageID 8-9.) Stevens does not allege that he was denied the ability to call witnesses or present evidence. He therefore does not state a due process claim with respect to the disciplinary hearing.

To the extent Stevens asserts he was entitled to additional due process protection because he was placed in segregation, he fails to state a claim. A prison disciplinary proceeding does not

give rise to a protected liberty interest unless the restrictions imposed constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Stevens alleges he was placed in segregation for a total of 67 days. Courts, however, have held that placement in segregation for longer than twelve months does not constitute "an atypical and significant hardship." *See, e.g., Dunbar v. Barone*, 487 F. App'x 721, 724-25 (3d Cir. 2012) (eighteen months); *Bradley v. Evans*, 229 F.3d 1150, 2000 WL 1277229, at *5-7 (6th Cir. Aug. 23, 2000) (fourteen months).

Stevens alleges that Sergeant Fine and Officer Dorsey falsified their testimony at his disciplinary hearing and caused his conviction. However, a prisoner has no due process right to be free of false disciplinary charges. *See Upshaw v. Jones*, No. 14-2534-JDT-TMP, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015) (citing *Person v. Campbell*, 182 F.3d 918, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) (unpublished)). Furthermore, Stevens cannot obtain money damages in this § 1983 action for the allegedly wrongful conviction because success on his claim in this case "would necessarily demonstrate the invalidity" of that disciplinary conviction. *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).

Stevens asserts that his placement in the supermax facility constitutes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," in violation of the Eighth Amendment. However, an increased security classification does not constitute an atypical and significant hardship. *See Workman v. Wilkinson*, 23 F. App'x 439, 440 (6th Cir. 2001) (citing *Sandin*, 515 U.S. at 484). Confinement to punitive segregation, the loss of package privileges, fines, and restitution also do not constitute atypical and significant hardships in the context of prison life. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). Nor is the Eighth Amendment violated by twenty-three hour per day confinement or limited access to cleaning or

11

hygiene products.  *See Argue v. Hofmeyer*, 80 F. App'x 427, 429-30 (6th Cir. 2003) (citing *Sandin*,

515 U.S. at 484-86, and *Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 2002) (inmate who failed

to allege "extreme discomfort" or complete denial of "basic elements of hygiene" did not state

Eighth Amendment claim)).  Stevens's allegations regarding his conditions in supermax placement

do not state an Eighth Amendment claim.

Stevens also alleges that he did not receive adequate notice, a hearing, or an opportunity to

respond to his supermax placement.  As noted above, however, his placement did not constitute

an atypical and significant hardship; and he does not allege that his placement in supermax cost

him any good time credits.  He alleges only that he lost those credits as punishment for his

conviction of the disciplinary charges.  Stevens therefore was not entitled to notice, a hearing, or

an opportunity to respond before his supermax placement.  *See Sandin*, 515 U.S. at 485-87.

In conclusion, the Court DISMISSES Stevens's official capacity claims against all of the

Defendants and his individual capacity claims against Defendants Chumley, Fine, and Dorsey for

failure to state a claim on which relief can be granted and for seeking relief against a Defendant

immune from such relief, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2).

It is ORDERED that the Clerk shall issue process for Defendant Lebo and deliver that

process to the U.S. Marshal for service. Service shall be made on Defendant Lebo pursuant to

Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10) by

registered or certified mail or personally if mail service is not effective.  All costs of service shall

by advanced by the United States.

It is further ORDERED that Stevens shall serve a copy of every subsequent document he

files in this cause on the attorneys for Defendant Lebo.  Stevens shall make a certificate of service

on every document filed.  Stevens shall familiarize himself with Federal Rules of Civil Procedure

and this Court's Local Rules.[5]

      Stevens is reminded that he must promptly notify the Clerk of any change of address or

extended absence.  Failure to comply with these requirements, or any other order of the Court, may

result in the dismissal of this case without further notice.

IT IS SO ORDERED.

                   s/ **James D. Todd**          
                   JAMES D. TODD
                   UNITED STATES DISTRICT JUDGE

---

[5] A copy of the Local Rules may be obtained from the Clerk or on the Court's website at
https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.